WOOLFORD et al. v. DIAMOND STATE STEEL CO.

MADEIRA, HILL & CO. et al. v. SAME.

(District Court, D. Delaware. May 27, 1905.)

Nos. 122, 123.

1. INVOLUNTARY BANKRUPTCY—INSUFFICIENT PETITION—AMENDMENT.

Where two petitions in involuntary bankruptcy were filed in the district court of the United States for the district of Delaware against a corporation April 12, 1905, each alleging only one and the same act of bankruptcy, namely, the appointment because of its insolvency of receivers and putting them in charge of the property of the corporation December 12, 1904, by the circuit court of the United States for the same district, and each of the petitions was substantially defective, although curable by amendment; and where it further appeared that all of the petitioning creditors in each petition before the appointment of receivers by the circuit court took part in procuring or consented to and approved the appointment of receivers and, thus, aided and assisted in the commission of the act on which their petitions in bankruptcy were founded; and where it further appeared that there was no evidence that the corporation was insolvent within the meaning of that term as used in the bankruptcy act; and where it further appeared that the estate of the corporation was in course of administration by the circuit court through its receivers, and that the receivers had faithfully, diligently and efficiently discharged their duty, and that whatever delay may have occurred was the result of causes over which they had no control; and where it further appeared that the throwing of the corporation into bankruptcy would cause unnecessary expense, delay and confusion in the proper administration of its property: *Held*, that applications to amend the petitions should be denied and motions for the dismissal of the petitions should be granted.

2. SAME.

If the petitions had not been defective, the petitioners would have had a right under the bankruptcy act to proceed to support them by evidence and, if successful, to have the corporation adjudged bankrupt, regardless of any delay, confusion or expense attending such a course. But the petitions being fatally defective, leave to amend should not be granted, thereby withdrawing the administration of the property from the circuit court, unless for cogent reasons, not appearing in this case.

(Syllabus by the Court.)

In Bankruptcy.

Robert H. Richards, Franklin S. Edmonds, Horace G. Knowles, and Dwight M. Lowry, for petitioning creditors.

H. H. Ward, A. C. Gray, and C. L. Ward, for the bankrupt.

BRADFORD, District Judge. Two petitions in involuntary bankruptcy were filed April 12, 1905, against The Diamond State Steel Company, a corporation of Delaware; one of them, being No.

122, purporting to have been signed and verified by or on behalf of Napoleon B. Woolford, the Sloss-Sheffield Steel and Iron Company, the Wilmington Oil Company and John R. Kilmer, and the other, being No. 123, by or on behalf of Madeira, Hill & Company, assignees of the George B. Newton & Company, the William H. Perry Company, and John J. Caine, Jr., Howard M. Plitt and George L. Plitt, trading as Caine & Plitt. In each of these petitions the commission of only one act of bankruptcy is alleged, namely, that December 12, 1904, and within four months next preceding the filing of the petition in bankruptcy, James P. Winchester and Howard T. Wallace were, because of the insolvency of The Diamond State Steel Company, appointed receivers and put in charge of the property of that company by the circuit court of the United States for the district of Delaware under a law of that state, pursuant to an order or decree in a suit in equity brought against the company by the firm of Henry A. Hitner's Sons. Appearances having been duly entered for the alleged bankrupt, a motion was by leave of the court made in each case that the petition be dismissed. Among the grounds upon which the motion in No. 122 is based the first is as follows:

"That it doth not appear by said petition, or by the record in said cause, that this court hath jurisdiction to adjudge the said The Diamond State Steel Company a bankrupt, in that it doth not appear either that said company hath had its principal place of business, resided or had its domicile within the territorial jurisdiction of said court for the six months, or the greater portion thereof, preceding the date of filing said petition, or that said company did not have its principal place of business, reside or have its domicile within the United States, but had property within the jurisdiction of said court, or that said company had been adjudged a bankrupt by a court of competent jurisdiction without the United States and had property within the jurisdiction of said court."

The averment in the petition in this connection is as follows:

"That The Diamond State Steel Company, a corporation created and existing under the laws of the State of Delaware, is engaged principally in manufacturing pursuits and owes debts to the amount of one thousand dollars and over and is insolvent."

The motion in No. 123 assigns six grounds, the first of which is as follows:

"That it doth not appear by said petition or by the record in said cause that this court hath jurisdiction to adjudge the said The Diamond State Steel Company a bankrupt, in that it doth not appear that said company is a corporation engaged principally in manufacturing, trading, printing, publishing, mining or mercantile pursuits."

The allegation in the petition to which the above ground applies is as follows:

"That The Diamond State Steel Company, a corporation organized under the laws of the state of Delaware, in the said district, has for the greater portion of six months next preceding the date of filing this petition had its principal place of business at the City of Wilmington, in the County of New Castle, and State and district aforesaid, and owes debts to the amount of $1,000.00."

Each petition omits an essential averment. The petition in No. 122 does not set forth facts to satisfy the requirements of section 2

(1), and that in No. 123 fails to disclose a case coming within section 4b of the bankruptcy act, of July 1, 1898, c. 541, 30 Stat. 545, 547, [U. S. Comp. St. 1901, pp. 3420, 3423]. The defect in each petition is substantial and, while not an incurable one, is fatal unless cured by amendment. The other grounds assigned relate to the verification of the petitions, but, while not doubting the sufficiency of some of them, need not be discussed. During or at the conclusion of the argument on the motions to dismiss the counsel for the petitioning creditors asked leave to amend the two petitions in such manner as to cure their defects, and thereupon a hearing was had upon this application. Thereafter it was suggested by the court to counsel that, as no affidavits or exhibits had been presented during the hearing bearing upon the propriety of allowing the proposed amendments, the court was not in possession of the facts necessary to an exercise of sound discretion in deciding the question of amendment. Leave was accordingly granted to counsel on both sides to produce affidavits and exhibits in support of or opposition to the application, and the application was fully heard May 15 and 16, 1905, on voluminous affidavits and exhibits. The hearing included the application in each case and was had on the same proofs, it having been agreed by counsel in open court that all affidavits and exhibits produced, whether entitled in one case or the other, should be treated as evidence in both so far as applicable in their nature. Both applications may conveniently be considered in one opinion. The records of this court show that an involuntary petition in bankruptcy, No. 105, against The Diamond State Steel Company was filed August 9, 1904, and that another involuntary petition in bankruptcy, No. 106, against the same company was filed August 10, 1904. In No. 105 Howard T. Wallace and James P. Winchester were appointed temporary receivers in bankruptcy August 13, 1904, and duly qualified. They were, among other things, authorized to conduct the business of the alleged bankrupt until the dismissal of the petition, the qualification of a trustee, or the further order of the court, and directed forthwith to make and file an inventory of all property which should come into their possession as receivers, together with a list of debts and credits due from and to the estate in their charge. The two cases were consolidated August 15, 1904. An inventory, as of August 15, 1904, was filed by the receivers September 20, 1904, showing that the par value of the preferred stock of The Diamond State Steel Company was $2,250,000.00, and of its common stock $2,000,000.00; that its issue of mortgage bonds was $1,000,000.00, on which there was some accrued interest; that the real estate of the company was valued on its books at $4,608,905.99; that the mortgage bond issue of $1,000,000 covered the real estate and works of the company which, in the opinion of the receivers, were worth, for the purpose of its business, considerably more than the amount of the bond issue; that, in addition to the real estate and plant of the company, its assets amounted to $511,537.71, and its liabilities, other than mortgage bonds, to $385,979.83. The Diamond State Steel Company, having filed its answer to the consolidated petitions denying insolvency, which was essential to the main-

tenance of each of the petitions, the consolidated petitions were set for a hearing November 25, 1904, and on the next following day, the counsel for the petitioning creditors having abandoned the prosecution of the cases, the court removed the receivers and ordered that due notice of the proposed dismissal of the proceedings in bankruptcy be given to creditors; that the receivers forthwith deliver the entire estate in their hands to The Diamond State Steel Company, except the amount allowed to them for their compensation and for counsel fees, and that within ten days they file an account of all their transactions. After due notice to creditors, including 228 mailed written notices and public notice by advertisement to all creditors of the company, the consolidated petitions were, December 12, 1904, in the absence of objection from any source, dismissed for want of prosecution; the court retaining jurisdiction for the purpose of passing upon the account of the receivers. The account was filed December 6, 1904, and subsequently was favorably reported on by the master, save in one comparatively unimportant particular, satisfactorily explained by the master, and was approved by the court. The account furnishes strong evidence of the capacity and diligence of the receivers and their fidelity to the trust imposed upon them, and that under their management the interests of the company and its creditors had been conserved and promoted in the face of adverse circumstances. From the time of their appointment in December, 1904, in the suit of Henry A. Hitner's Sons the receivers have had the charge and management of the property and business of The Diamond State Steel Company under the orders and decrees of the circuit court.

The granting of leave to amend the petitions, which might result in throwing The Diamond State Steel Company into bankruptcy, is a subject which has received careful consideration. In a suit between two individuals where one of them has made a slip in his pleadings, fatal unless corrected, the court usually will allow an amendment on or without terms, if not calculated to subject the other party to undue hardship or prejudice. Under such circumstances to refuse an amendment may and probably would not be an exercise of sound discretion. But there are cases in which leave to amend should be denied in the exercise of such discretion, owing to the character and relationship of the persons and interests to be affected. In one of the pending bankruptcy cases three alleged unsecured creditors, and, in the other, four, seek to have a large estate, real and personal, in which hundreds of creditors are interested, now in custodia legis and in course of administration by the circuit court, pursuant to the desire of an overwhelming majority of creditors holding an overwhelming proportion of the amount of unsecured claims, turned over to this court for administration in bankruptcy. If the petitions were not defective, the petitioners would have a right under the bankruptcy act to proceed to support them by evidence, and, if successful, to have The Diamond State Steel Company adjudged bankrupt, regardless of any delay, confusion or expense attending such a course. But the petitions being fatally defective, leave to amend should not be granted and

the administration drawn from the circuit court unless for cogent reasons. It should at least appear that a clear preponderance of the interests of the unsecured creditors, to say nothing of the holders of mortgage bonds, would better be conserved or promoted by proceedings in bankruptcy than by the administration of receivers acting by authority of the circuit court. It is material to allude to the circumstances which led to the bringing of the suit of Henry A. Hitner's Sons and the appointment of receivers in December, 1904. Joseph G. Hitner, a member of the firm of Henry A. Hitner's Sons, in his affidavit states in substance, among other things, as reasons for his joining in the bill of complaint in the circuit court, that Wallace, subsequently appointed as one of the receivers, represented to him that by permitting the affairs of The Diamond State Steel Company to be administered under a general receivership, the best interests of the creditors would be preserved; that a greater opportunity would be given to Wallace to perfect certain plans for the reorganization of the company, involving a sale of its plant, about which he was then negotiating; that by such reorganization the creditors would be paid in full; that the policy of the said receivership would be one of quick and profitable liquidation and an early payment of all the claims of the general creditors; that all the plans for such reorganization could be more quickly and surely accomplished under a general receivership than under the bankruptcy proceedings. Hitner further states that in December he was of opinion that by reason of the then condition of the market, it would not be advisable to sacrifice the assets of the company in bankruptcy proceedings at that time, and' that if a general receiver should be appointed under the state law, with power to operate the plant, "by the time the spring came, a more advantageous sale of the said assets could be made, and the interests of the creditors thereby protected." Louis C. Madeira, Jr., Edward Page, Joseph G. Hitner, John J. Caine, Jr., Allen R. Hoffer and Eugene W. Stirlith, in a joint affidavit, state in substance, among other things, that they are the duly authorized representatives of creditors of The Diamond State Steel Company; that deponents used their influence with the creditors of the company to secure a discontinuance of the bankruptcy proceedings instituted in August, 1904, relying, in so doing, upon the representations of Wallace that the personal assets of the company were sufficient to pay all of its general creditors, and that by proceedings under a general receivership there would be a quick and profitable liquidation of such assets. Frank W. Todd in his affidavit states in substance, among other things, that for several years he has been acting treasurer of The Diamond State Steel Company; that pursuant to a call for the holding of a meeting of the unsecured creditors of the company, which was sent to all of its unsecured creditors, a meeting of such creditors was held in Wilmington, Delaware, November 22, 1904. It further appears from Todd's affidavit that upwards of two-thirds in amount of the unsecured creditors of the company were present at the meeting, so called and held, either in person or by duly authorized representatives; such creditors being 229 in number, whose claims aggregated

$93,526.02; that at the meeting the following resolution, after discussion and explanation, was adopted without a dissenting vote:

"Resolved, That it is the opinion of this meeting that a dismissal of the bankruptcy proceedings now pending against The Diamond State Steel Company, and the appointment of general receivers for said Company is the course best calculated to protect the interests of the creditors of said company, and that it is the desire of this meeting that this result shall be brought about if possible."

The call referred to in the above affidavit was dated November 18, 1904, issued by Wallace, addressed to the creditors of the company, and was in part as follows:

"The writer is positive that the Company has sufficient assets to pay all creditors in full, providing the affairs of the Company can be liquidated in a manner which will enable fair prices to be obtained for them. He is equally convinced that if the affairs of the Company must be liquidated through bankruptcy, it will mean a material loss to the creditors. Since the temporary receivers in bankruptcy have been in charge, the writer has diligently labored to have an agreement reached between creditors which would permit the dismissal of the bankruptcy proceedings and the appointment of general receivers, the object of this being, not that the adjustment of the Company's affairs may be delayed, but rather that this may be facilitated. You are doubtless aware of the present market conditions in iron and steel lines, and of the fact that both the personal and real property of such a Company as this is of much greater value to-day than it was even three months ago, and that the opportunities now presented for the adjustment of the Company's affairs, which would involve the speedy payment of creditors without waiting for liquidation through sales of material, are easily within the range of the probable. Under the circumstances I consider it essential to have a general meeting of the creditors of the Company, to determine what course they desire shall be pursued. Therefore a meeting of the creditors is called to be held at the office of the Company, * * * on Tuesday, November 22d, at 1.30 p. m., to consider the situation, and determine the best course to be pursued under the circumstances. I earnestly request that you be personally present at this meeting if possible, or, if not, that you be represented by some person with power to act."

Wallace in his separate affidavit states:

"That the claims of the creditors present or represented at said creditors' meeting and of the creditors who thereafter indicated their consent to or acquiescence in the appointment of said general receivers and approving the action of said meeting amount to a total of about $129,411.10 out of about $145,927.01, the total indebtedness of said defendant company to unsecured creditors."

Wallace and Winchester in their joint affidavit state:

"That subsequent to said meeting of creditors and prior to the 12th day of December, 1904, in response to a letter written by the said Howard T. Wallace, as president of said company, many other creditors of said company who had not been represented at said meeting signified their consent and approval of the action taken at said meeting looking to the final dismissal of said pending bankruptcy proceedings and the proposed securing of the appointment, if possible, of a general receiver for said company. That prior to the said 12th day of December, 1904, all of the unsecured creditors of said company, except a very small residue thereof, either through said meeting of creditors or through said letters thereafter received, had given their consent and approval to the proposed application to secure the appointment of said general receivers of said company."

From the affidavits, wholly uncontradicted in this respect, it appears that at least three fourths of all the unsecured creditors of

The Diamond State Steel Company holding between eighty eight and ninety per cent. of the total unsecured indebtedness of that company, advocated, consented to, approved of or acquiesced in the termination of the original bankruptcy proceedings and the appointment by the circuit court of receivers for that company. Under these circumstances Wallace and Winchester were appointed receivers by the circuit court. It is stated in substance by Winchester and Wallace in their joint affidavit, and by Wallace in his separate affidavit, that all of the petitioning creditors in the pending bankruptcy cases were either present or represented at the creditors' meeting above referred to, or thereafter by letter signified their consent to the proposed appointment of receivers. This statement is substantially, if not literally, correct. It appears that of the four petitioning creditors in No. 122 two, namely, the Wilmington Oil Company and John R. Kilmer, were present or represented at the meeting of creditors November 22, 1904, which adopted without a dissenting vote the resolution that it was the opinion of the meeting that the dismissal of the former bankruptcy proceedings and the appointment of general receivers for said company "is the course best calculated to protect the interests of the creditors of said company, and that it is the desire of this meeting that this result shall be brought about if possible." Napoleon B. Woolford, another of the petitioning creditors, who did not attend that meeting, consented in writing November 28, 1904, to the appointment of receivers. It further appears that at that meeting the remaining petitioning creditor, the Sloss-Sheffield Steel and Iron Company, was represented by counsel who declined to vote for or against the resolution advocating the appointment of receivers. The affidavits show that December 12, 1904, Henry C. Conrad, Esq., representing the Sloss-Sheffield Steel and Iron Company, was present at the proceedings in the circuit court which resulted in the appointment of receivers, and was one of the counsel who conferred with the judge of that court in chambers on the same day relative to the personnel of the receivers, and suggested names of certain persons for appointment to that office, and thereby, in behalf of the Sloss-Sheffield Steel and Iron Company, consented to and acquiesced in the appointment of receivers. Thus all of the petitioning creditors in No. 122 consented to the appointment of receivers. It further appears that of the three petitioning creditors in No. 123 the George B. Newton & Company, represented in the petition by Madeira, Hill & Company, as assignees, and John J. Caine, Jr., Howard M. Plitt and George L. Plitt, trading as Caine & Plitt, were also present or represented at the creditors' meeting just mentioned; and that the William H. Perry Company, the remaining petitioning creditor, through its manager duly authorized in that behalf, consented in writing December 9, 1904, to a circuit court receivership, saying in a letter to The Diamond State Steel Company, among other things:

"Replying to your favor of the 7th instant, would say that we are in favor of having general receivers appointed to settle up the affairs of your company; and would like very much to see your president, Mr. H. T. Wallace, appointed receiver."

It therefore appears without contradiction that all of the petitioning creditors in both of the pending bankruptcy cases before the appointment of receivers by the circuit court either took part in procuring or consented to and approved the appointment of receivers; and by so doing aided and assisted in the commission of the act on which their petitions in bankruptcy are founded. It is at least questionable whether persons who procure or connive at the commission of an act of bankruptcy are competent to maintain proceedings in bankruptcy on account of that act. In re Romanow (D. C.) 92 Fed. 510; Leidigh Carriage Co. v. Stengel, 95 Fed. 637, 643, 37 C. C. A. 210; Simonson v. Sinsheimer, 95 Fed. 948, 954, 37 C. C. A. 337; In re Miner (D. C.) 104 Fed. 520; Durham Paper Co. v. Seaboard Knitting Mills (D. C.) 121 Fed. 179; Clark v. Henne & Meyer, 127 Fed. 288, 62 C. C. A. 172; Lowenstein v. Henry McShane Mfg. Co. (D. C.) 130 Fed. 1007; Moulton v. Coburn (C. C. A.) 131 Fed. 201. It is true that such an objection, although presented in argument, was not included among the grounds assigned in the motion to dismiss the petitions. Should, however, the proposed amendments be allowed, the objection undoubtedly would be raised by answer. This circumstance may be entitled to some weight in the determination of the application for leave to amend. But, aside from any participation by the petitioning creditors in a course intended and calculated to result in an act of bankruptcy, there are grounds of a broader nature on which must be determined the propriety or impropriety of allowing the amendments sought.

It is material to consider the grounds on which it is desired by some of the unsecured creditors to terminate the receivership and throw The Diamond State Steel Company into bankruptcy. In the joint affidavit of Louis C. Madeira, Jr., and others, already referred to, it is stated:

"That on or about January 10th, A. D. 1905, your affiants joined with other unsecured creditors of the said company in calling a meeting of all of the general creditors of the said company, whereof all of the said general creditors were duly notified, to be held at the Real Estate Trust Building, in the City of Philadelphia, on the 20th day of January, A. D. 1905. That the said meeting was duly held, at the time and place indicated in the said notices, and was attended either in person or by attorney, by a majority of the creditors both in number and amount."

The deponents further aver that at the meeting they were elected a committee to represent the creditors of The Diamond State Steel Company, and authorized to collect information concerning the affairs of the company and advise the creditors about the same. They then proceed as follows:

"That, at said meeting, the said Howard T. Wallace presented a suggestion for the liquidation of all claims through the sale of the plant of the company to parties with whom the said Howard T. Wallace alleged that he was negotiating. That, after said meeting, said committee met from time to time, and conferred frequently with the said Howard T. Wallace. That although frequently urged to do so, said Howard T. Wallace did not, would not, and has not, presented any plan to said committee which promises a reasonable and proper liquidation of the claims of the general creditors of the said company. That the said committee called a second meeting.

of the general creditors of the said company, by mailing a notice of the same to each of the said creditors, which said meeting was held on the 16th day of March, 1905, at the Real Estate Trust Building in the city of Philadelphia, at which meeting the said committee presented a general report; after which a resolution was unanimously adopted as follows:

'Resolved: That the creditors of The Diamond State Steel Company, here present, hereby express their appreciation of the work of the creditors' committee appointed at the last meeting and so far as in their power, hereby authorize the committee to continue its inquiry, and to take such steps as in its judgment may be deemed advisable to bring about a prompt settlement of existing difficulties.'

That, being advised by counsel that the last day upon which a petition in bankruptcy could be filed against the said The Diamond State Steel Company was the 12th day of April, A. D. 1905, said committee held several meetings immediately prior to that date, in order to determine if the best interests of the creditors would necessitate a renewal of the bankruptcy proceedings. That, after mature deliberation, the said committee concluded that during the four months of the general receivership, there had been no material progress in the solution of the difficulties of the said company; that the vague plans and propositions which had been occasionally referred to by the said Howard T. Wallace were too elusive and indefinite to warrant consideration as business propositions; that there was reason to believe that the said Howard T. Wallace was endeavoring to prevent a quick liquidation of the assets of the said company in the hope of receiving some proposition for the purchase of the plant of the said company which would secure a return to the stockholders of the said company of a part at least of their investment. That, in addition to the reasons above set forth, the said committee of creditors, after a careful examination of the conditions of business, feel that the personal assets of the said company should have been sold during the early part of April, 1905, when high prices for such articles, as make up the larger portion of the said assets, prevailed; and that the said committee cannot commend the policy which involved the said Receivers in such litigation as prevented the disposition of said assets at the time indicated. That it is the belief of the said committee, after conferring together and after having the advice of counsel, and after giving a very careful consideration to the subject, that the interests of all the creditors will be more thoroughly protected, if the estate of the said The Diamond State Steel Company is administered by a trustee or trustees elected by them in bankruptcy proceedings; that by electing a trustee in whom they have confidence and upon whose administration they can rely with feelings of security, the claims of the creditors will probably receive a larger dividend than they would under the pending receivership. That the creditors, in bankruptcy proceedings, will have a more direct voice in the administration of the estate and in the disposal of its assets, than in the pending receivership; and by occasional or frequent meetings before a referee in bankruptcy, every important action and proposal concerning the estate can receive the thoughtful deliberation, consideration and vote of the creditors; the trustee will have the benefit of the opinions, suggestions and wishes of the creditors, who are business men, familiar with the business and assets of the bankrupt company; and that the administration in bankruptcy will be more speedy and expeditious and will probably save the creditors a large amount in costs and legal expenses. That, in consideration of the earnest requests of the said Howard T. Wallace, and of the allegations made by him concerning propositions which he had received for the purchase of the plant of the said company, which provided for the payment of the creditors in full, the said committee delayed taking any action leading to the institution of bankruptcy proceedings until the last possible date, in order that every possible opportunity might be given to the said Howard T. Wallace to consummate the negotiations which he alleged were pending for the sale of the plant of the said company, and pay off the creditors in that manner. That upon the 11th day of April, 1905, the said Howard T. Wallace having failed to present a definite plan for the purchase of the plant of the said company, and considering the facts above set forth, the said committee of creditors

instructed their counsel to institute bankruptcy proceedings in order that the control of the assets of the said company may be vested in such trustee or trustees as the creditors of the said company may elect."

Joseph G. Hitner, one of the complainants in the suit in which Wallace and Winchester were appointed receivers, and also one of the joint affiants, and a member of the committee of creditors, in a separate affidavit, among other things, states:

"That the said receivers were appointed by the said United States Circuit Court upon the 12th day of December, A. D. 1904, and that from that date until the present time, the said receivers have done practically nothing toward a liquidation of the assets of said company, and a payment of the claims of the creditors of the said company. * * * That said committee had many meetings, at which the said Howard T. Wallace was often present, and although requested to do so, the said Howard T. Wallace did not and has not presented to the said committee any plan which is in any way definite in its nature, or providing a reasonable and prompt liquidation of the claims of the creditors. That by reason of the inability of the said committee to obtain any definite plan from the said Howard T. Wallace providing for the payment of the claims of the creditors, the said committee called another meeting of the creditors, and presented its report to the meeting held on the 16th day of March, 1905. Upon the report of the committee a resolution was unanimously adopted authorizing the committee to take such steps on behalf of the creditors as they might deem best. That from that time until the 12th day of April, A. D. 1905, the committee and the said affiant personally, endeavored to obtain from the said Wallace information concerning a definite plan for reorganization of the said company which would protect the interests of the creditors. Tha.: the plans presented by the said Howard T. Wallace were too vague and elusive to be seriously considered as business propositions; that the policy of the said Wallace seemed to be one of delay for reasons unknown to your affiant, and not a policy tending to a sale for the interests of the creditors. That the market for the assets of said company in April of 1905 was such that had there been a sale of the assets of the said company, the best possible prices would have been obtained, and the interests of the creditors thereby advanced. That the policy of delay on the part of the receivers is one which will result in a material diminution of the value of the assets of the said company, and hence a loss to the said creditors. That the said affiant is therefore of opinion that the best interests of the creditors will be preserved by the election of a trustee in bankruptcy, in order that there may be a liquidation of the assets of the said company, at some time in the near future, when highest prices for the said assets can be obtained. That the said affiant heartily endorses the action of the creditors' committee in instituting proceedings in bankruptcy, believing that the administration of the estate of the said company in the bankruptcy proceedings will result far more advantageously to the creditors than by proceedings under the present receivership."

In addition to the foregoing affidavits in support of the application to amend there are affidavits severally made by Robert M. Cunliffe, Robert K. Cassatt, Frank Toomey, J. S. W. Holton, J. V. S. Bishop, Simon Weil and William J. Cooley, being or representing general creditors of The Diamond State Steel Company. In each of these affidavits the only averments material in this connection are in the following language:

"That he endorses the policy of the creditors' committee. * * * That, from knowledge, information and belief, your affiant is of opinion that the interests of all the creditors will be more thoroughly protected if the estate of the said The Diamond State Steel Company is administered by a trustee or trustees elected by them in bankruptcy proceedings and that the most simple and expeditious manner of liquidating the assets of the said company for the benefit of the creditors will be through bankruptcy proceedings in

the United States District Court; and that under said proceedings the claims of the creditors will probably receive a larger dividend than they would under the pending receivership."

In the affidavits of Charles R. Bachman, Napoleon B. Woolford and John R. Kilmer, the two latter being petitioning creditors in No. 122, it is averred in substance that the affiants are of the opinion that the best and most effective method of administering the assets of The Diamond State Steel Company would be by proceedings in bankruptcy and not through the receivership. In none of these three affidavits does the affiant disclose any facts supporting his opinion. The principal affidavits in opposition to the granting of leave to amend, on this branch of the case, are the joint affidavit of Wallace and Winchester and the separate affidavit of the former in each of the pending bankruptcy cases. In the joint affidavit, among other things, it is stated:

"That for several years prior to the month of August, A. D. 1904, the said Howard T. Wallace was, and at all times since said time, hath continuously been, the president of The Diamond State Steel Company, the above named defendant. That on the ninth and tenth days of August, A. D. 1904, two petitions in involuntary bankruptcy were filed in this court against the said The Diamond State Steel Company, being Nos. 105 and 106 in bankruptcy. * * * That The Diamond State Steel Company appeared in and made defenses to said petitions in bankruptcy and such proceedings were had thereunder, that on the thirteenth day of August, 1904, a decree was entered therein appointing said Howard T. Wallace and James P. Winchester, these deponents, receivers in bankruptcy of the said The Diamond State Steel Company. That said petitions were, upon motion and upon the order of the court, about the date last aforesaid, consolidated into one petition, known as No. 105 and 106 consolidated in bankruptcy. That these deponents duly administered the estate of said The Diamond State Steel Company from the time of their appointment until the 26th day of November, A. D. 1904, and on the 20th day of September, 1904, filed a report as such receivers showing the assets, liabilities and financial condition of said company, by which report it appeared that the personal assets of said company exceeded the unsecured liabilities thereof by upwards of $125,000. * * * That on the said 26th day of November, 1904, the petitioning creditors in Nos. 105 and 106 consolidated in bankruptcy, in open court abandoned the prosecution of said petitions, and the court thereupon ordered that ten days' notice of the proposed dismissal of said proceedings in bankruptcy be given to the creditors of said company; and it was thereupon ordered that the said Howard T. Wallace and James P. Winchester, said receivers, be removed from their said office, and their office as receivers as aforesaid be thereupon ended and determined. That on the 12th day of December, A. D. 1904, said consolidated petition Nos. 105 and 106 in bankruptcy was in due course dismissed by this court, no creditor of said defendant company appearing in opposition thereto. * * * That on the said 12th day of December, 1904, in compliance with the said resolution of creditors and with the subsequent consents thereto as aforesaid, a bill in equity was filed in the circuit court of the United States for the district of Delaware by Henry A. Hitner and Joseph G. Hitner, trading as Henry A. Hitner's Sons, against the said The Diamond State Steel Company, being No. 260 in equity, for the appointment of general receivers for said company. To said bill in equity the said company thereupon filed its answer, admitting the averments of said bill. * * * That thereupon the court by its decree, on the 12th day of December, A. D. 1904, in accordance with the prayer of said petition, appointed these deponents, the said James P. Winchester and Howard T. Wallace, general receivers of said company, which said receivers have from thence, hitherto, been continuously in charge of the assets, property and estate of said The Diamond State Steel Company under the order and direction of the said

circuit court of the United States. That under the order of the said circuit court and within the period of three months after their appointment, to wit, on or about the 11th day of March, 1905, these deponents, as said general receivers, filed their report showing in detail the assets, liabilities and general financial condition of said company. That by said report it appears that the personal assets of said defendant company, upon a fair valuation, exceed the unsecured debts and liabilities of said company by a large sum of money, to wit, the sum of upwards of one hundred and forty eight thousand dollars ($148,000). * * * That upon the qualification of said receivers and the assumption of their duties as such, objection was raised by a creditor of said defendant company against any further sales by the Philadelphia Warehouse Company of personal property of said defendant company upon which the said Philadelphia Warehouse Company claimed a lien conferring the right of such sale. By reason of such condition the receivers felt it their duty first to secure a determination by the court of the right of said receivers to in due course liquidate the debts of said company by a sale of its personal assets, and of the right of said Philadelphia Warehouse Company to control or interfere with such sale and liquidation. That thereafter, as appears by the certified copy of said record of said cause in equity, two several applications were made by said receivers for orders of said court authorizing them to make sales of the personal property of said defendant. That the larger part of the personal property of said defendant was covered by said alleged lien of said Philadelphia Warehouse Company, and the lots of personal property were so divided between the personal property unpledged and personal property alleged to be covered by the pledge of said Philadelphia Warehouse Company that said receivers were unable to advantageously dispose of any large portion of said personal property until the respective rights of said receivers and of said Philadelphia Warehouse Company had been defined by said court. That almost continuous negotiations were carried on between the said Philadelphia Warehouse Company and said receivers subsequent to their appointment, looking to either an amicable adjustment of the rights of said respective claimants to said property or to the bringing of a suit by said Philadelphia Warehouse Company against said receivers to determine the rights of said Philadelphia Warehouse Company, until on the first day of March, 1905, said Philadelphia Warehouse Company brought its suit against said receivers and against the said The Diamond State Steel Company, for the purpose of determining its right to the disposal of said personal property alleged to be covered by its said lien. That promptly on the filing of the bill in equity of said Philadelphia Warehouse Company as aforesaid, in the circuit court of the United States for the District of Delaware, these deponents as receivers as aforesaid, and said defendant company filed their joint and several answer to which replication has been filed and said cause is now at issue. That the said claim of said Philadelphia Warehouse Company under its said lien was the sole cause which has prevented these deponents as receivers as aforesaid from hitherto disposing of the personal property of said defendant company. That the issues raised by the said bill of complaint of said Philadelphia Warehouse Company and the answer of the defendants thereto must be first tried and determined before any effective steps can be taken for the disposal of said personal property. That the disposal of said issues would, in the judgment of these deponents, be more speedy if the general receivership of said company could be allowed to continue than would be possible under bankruptcy proceedings. * * * That a few days before the expiration of four months after the appointment of said general receivers as aforesaid, to wit, early in April of the present year, said creditors' committee" (appointed in Philadelphia January 20, 1905) "communicated through their counsel to said general receivers of said company a demand that said receivers should consent to and co-operate in the appointment of a third co-receiver by said circuit court, to be selected by said creditors' committee, and coupled with said demand a declaration of their intention, in default of the appointment of said co-receiver by said court, with the co-operation of these deponents as such receivers, to file an involuntary petition in bankruptcy against said defendant company, alleging as the act of bankruptcy

138 F.—38

in said petition the said appointment of these receivers as general receivers as aforesaid. That these deponents, having in mind the interests of all of the creditors of said company and believing that the liquidation of the affairs of said company under said general receivership would be beneficial to said creditors as compared with a liquidation of said company's affairs in a court of bankruptcy, were induced by said demand and threat of bankruptcy proceedings to consent to said proposed plan. That upon the insistence of said creditors' committee, through their counsel as aforesaid, that the judge of said circuit court should be consulted prior to the 12th day of April, 1905, (which was the last day of said four months after their appointment as receivers as aforesaid), as to the willingness of said judge to appoint said third co-receiver under the circumstances aforesaid, the counsel of these deponents, receivers as aforesaid, together with said counsel of said creditors' committee conferred with the judge of said court and laid before him the said demand of said creditors' committee and its accompanying expressed intention to file petitions in bankruptcy as an alternative in case such third co-receiver were not appointed, with a view to ascertaining whether the judge of said court would favorably entertain an application for the appointment of said third co-receiver under the circumstances aforesaid. That the said judge of said circuit court wholly declined to consider the question of the appointment of such third co-receiver in advance of a formal application to him therefor. That said conference with said judge took place upon the eleventh day of April, 1905. In default of any definite information on the part of the judge of said court as to what his action would be upon such application for said third co-receiver, the pending petitions in bankruptcy against said The Diamond State Steel Company, being Nos. 122 and 123 in bankruptcy, were on the following day, the 12th day of April, 1905, filed in this court. These deponents aver that each and all of the petitioning creditors in said causes in bankruptcy, Nos. 122 and 123 in this court as aforesaid, had notice and knowledge not only of the intention to apply for the appointment of general receivers for said company upon the dismissal of the proceedings in bankruptcy, Nos. 105 and 106 consolidated in this court, but also of the actual appointment of said receivers on or about the date of said appointment. That the filing of said petitions in bankruptcy was by said petitioners delayed until the last day of the four months provided by the bankruptcy act within which, after the alleged act of bankruptcy, advantage could have been taken of said alleged act, by way of such petitions in bankruptcy. That during all of said four months, lacking one day, these deponents as general receivers of said company, as aforesaid, have been constantly engaged in caring for and in administering the estate of said defendant company, have necessarily expended money and entailed large expense in and for the performance of their duties as such receivers, and have produced such results in the direction of the final liquidation of the affairs of said company as, by due diligence, and under the circumstances of the case, as above detailed, they have been able. That the allowance of the proposed amendment of the petition in bankruptcy filed in this cause, if it should eventuate in the final adjudication of the bankruptcy of defendant company, would result in the loss of the said four months time in the liquidation of said estate, of the position now attained under said receivership toward said liquidation, and of the expenditures made and expenses incurred in and for said general receivership. That efforts have been made by these deponents during said receivership to procure such a reorganization of the said company and such a disposition of its assets, as would result in the complete payment of all creditors of said company, and such efforts have resulted in most encouraging conditions. That negotiations are now pending which seem likely to bring about such desired end and such a disposition of the assets of the company as will not only pay and satisfy all of the company's debts, but also secure some return to the stockholders of the company. That the pendency of the proceedings in bankruptcy against said company materially interfere with, if they do not wholly destroy, the chances of bringing such negotiations to a successful conclusion."

The joint affidavit of the receivers in No. 123 is mutatis mutandis similar to that in No. 122. The separate affidavit of Wallace in each

case is in accord with the joint affidavits of Winchester and himself. The gross impropriety on the part of the committee of creditors, or its counsel, in attempting, April 11, 1905, to coerce the judge of the circuit court under the threat of bankruptcy proceedings, to appoint a third receiver for The Diamond State Steel Company "to be selected by said creditors' committee"—no formal application for the appointment of such third receiver having been made to the court—needs no comment, save that it was a clear breach of the code of professional ethics which has obtained in this judicial district, and I assume elsewhere. It is, however, fairly to be inferred from the incident, just alluded to, that if the court had abdicated its function of selecting and appointing receivers, and complied with the request made to the judge at chambers, the pending petitions in bankruptcy would not have been filed. This certainly affords strong circumstantial evidence that the creditors' committee did not so much desire the institution of proceedings in bankruptcy on the next following day as a continuance of the general receivership with the addition of a third receiver of its own selection. The receivers had acted harmoniously with each other in all respects. The suggestion of the appointment of a third receiver to co-operate with the two already appointed, who, as above stated, were harmonious in their policy and management of the estate, seems unreasonable. It is hardly to be supposed that a third receiver selected by a creditors' committee hostile to the present receivers could have controlled their action, or, indeed, that such result could have been realized by the appointment of less than three additional receivers, largely increasing the expenses of administration through compensation to the receivers and counsel fees. The receivers are men of character and standing; one of them for a number of years having been president of The Diamond State Steel Company and thoroughly acquainted with the operation of its works and the details of its business, and the other the president for many years of one of the principal national banks in Wilmington, skilled in figures and accounts, who in other cases in equity in the circuit court in this district has most acceptably discharged the office of receiver. Had they or either of them been guilty of any official dereliction, whether of commission or omission, it was open to creditors or other persons in interest to bring the matter to the attention of the court for proper action. Yet the records do not disclose that any person at any time prior to the filing of affidavits on this hearing made any complaint to the court of any alleged incompetency, fault or inattention to duty, on the part of them or either of them. Nor do the affidavits as a whole show that the receivers have in any manner merited unfavorable criticism. In one or two of the affidavits on the part of the petitioning creditors there are averments, which without explanation, seem to reflect upon them. But these averments are fully met and explained by the exhibits as well as other affidavits. Copies of the record of the suit of Henry A. Hitner's Sons against the Diamond State Steel Company and of the suit of the Philadelphia Warehouse Company against the receivers, are before the court as exhibits attached to and made part of some of the

affidavits. On careful examination of these records I have found nothing suggesting undue delay in the administration of the estate or indisposition on the part of the receivers or either of them to care for the interests of creditors or others interested in the company. On the contrary it appears from the records that they have faithfully, diligently and efficiently discharged their duty, and that whatever delay may have occurred was the result of causes over which they had no control and of the action of certain unreasonably dissatisfied creditors or their counsel in the institution of the pending proceedings in bankruptcy. The bill of Henry A. Hitner's Sons was filed November 28, 1904, the subpœna being returnable on the first Monday in January, 1905. The company did not avail itself of the delay allowed by law, but entered an appearance and made answer December 12, 1904, the same day the receivers were appointed. March 11, 1905, the receivers filed their report, which was elaborate and involved much time and labor, showing in detail the assets and liabilities and general financial condition of The Diamond State Steel Company, from which it appeared that the personal assets of the company, on a fair valuation, exceeded its unsecured debts and liabilities by more than $148,000; while by their report as temporary receivers in bankruptcy filed September 20, 1904, such excess was about $125,000. It does not appear by the record that any exception or objection to the correctness of this showing has ever been made by anyone. The receivers, January 17, 1905, only a little more than one month after their appointment, applied by petition for leave to sell a portion of the personal property at private sale, stating, among other things:

"That the market for the manufactured products of said company and for the unmanufactured material of said company is at this time more favorable than it hath heretofore been, and your petitioners are of the opinion that it would be for the best interests of the creditors and other persons interested in the assets of said company that certain portions of the personal property belonging to said company, manufactured and unmanufactured, should be sold. * * * That certain portions of said personal property of said corporation are subject to the lien of the Philadelphia Warehouse Company, and now remain upon certain lands of The Diamond State Steel Company, leased to said Philadelphia Warehouse Company."

After averring that the personal property on which the Philadelphia Warehouse Company claimed a lien, covering the larger portion of the personal property of The Diamond State Steel Company, was so similar to the other personal property sought to be sold and "so equally the subject of profitable present sale that, in the judgment of your petitioners, any order directing the sale of any of said personal property should cover both the property subject to lien and that not subject to lien," the petition proceeded:

"Your petitioners are of the opinion that said property should be disposed of, or offered for sale, by your petitioners as receivers of this court, at private sale, believing that thereby the best market prices can be obtained and such sales effected with least loss. At such private sale such property can also be sold in such parcels or quantities as to insure best prices therefor."

The prayer of the petition was in part as follows:

"Your petitioners therefore pray the court for the order and direction of the court, authorizing your petitioners to sell any part or all of the personal

property included within the said schedules C and D hereto appended, from time to time, at private sale, at the best prices that can by them be obtained therefor, according to the state of the market; and upon the making sales of property so covered by said lien, to keep in a separate account the proceeds of said sales of property covered by said lien, subject to the future disposition thereof under the orders of the court, upon the determination of the validity of the lien of said Philadelphia Warehouse Company."

At the expiration of a rule to show cause why the prayer of the petition should not be granted the Philadelphia Warehouse Company, January 28, 1905, appeared and filed an answer, objecting, among other things, to the form of procedure and a private sale by the receivers of the property on which the Philadelphia Warehouse Company claimed a lien. A hearing was had February 4, 1905, and an order was made authorizing the receivers to sell personal property of The Diamond State Steel Company not covered by the alleged lien of the Philadelphia Warehouse Company. March 1, 1905, leave was granted to the latter company to file a bill against the receivers touching the validity and enforcement of the alleged lien, and accordingly on the same day the bill was filed and a subpœna issued returnable on the first Monday in April. The receivers, not waiting for the expiration of the time allowed by law, filed their answer March 29, 1905; and the Philadelphia Warehouse Company filed its replication April 8, 1905, four days before the commencement of the pending proceedings in bankruptcy. April 4, 1905, the receivers applied by petition for the sale of personal property of The Diamond State Steel Company, part of which had been pledged to the Philadelphia Warehouse Company and part unpledged. On the same day leave was granted to the Philadelphia Warehouse Company to plead, answer or demur to the above petition by April 11, 1905. On the last named day leave was granted to the receivers to abandon without prejudice their petition of April 4, 1905, and to file a new petition in lieu thereof, which was accordingly done on the same day. And also on the same day leave was granted to the Philadelphia Warehouse Company to file an answer to the last named petition of the receivers, which was forthwith done and a hearing had the same day on the petition and answer. The above mentioned facts, aside from other applications made by the receivers, as disclosed by the records, clearly sustain them in the statement that such delay as has occurred was caused by the litigation touching the alleged lien of the Philadelphia Warehouse Company and a private sale by the receivers of the property covered by such lien. The receivers were in nowise responsible for the embarrassing position with which they were confronted. I have no doubt that there has been much disappointment owing to the failure of expectations of an early winding up of the property and affairs of The Diamond State Steel Company, although the space of four months between the appointment of the receivers and the filing of the pending petitions in bankruptcy is by no means an unreasonable time within which to accomplish the desired result, or that such disappointment is shared by the receivers as well as by the creditors. This is evident from the affidavits. Some of the affiants on the part of the petitioners charge the receivers with failing to give

creditors a statement of any definite and satisfactory plan for the liquidation and payment of claims, and with giving to them on that subject only vague and indefinite information. Were such the case, it would be fully accounted for by the pendency of the litigation with the Philadelphia Warehouse Company, which involved a very large amount of the property of The Diamond State Steel Company. This litigation could not be avoided by the receivers without dereliction on their part. And it must be borne in mind that the receivers are not the officers of any creditors' committee, but of the circuit court; and that if cause of complaint existed it should have been brought to the attention of that court. While it would be improper to state any negotiations or proposals in the case of the Philadelphia Warehouse Company against The Diamond State Steel Company which are not disclosed by the record, I have no reason to doubt that an arrangement may shortly be made by which the property covered by the alleged lien of the former company may be sold at private sale at such time or times as to command satisfactory prices, and the proceeds of sale, or enough to pay the claim of that company, paid into court, subject to its further order on the adjudication of the case. The receivers in their affidavit say that their "efforts have resulted in most encouraging conditions;" that "negotiations are now pending which seem likely to bring about such desired end"—the reorganization of the company—and that "the pendency of the proceedings in bankruptcy against said company materially interfere with, if they do not wholly destroy, the chances of bringing such negotiations to a successful conclusion." This court would not, in my opinion, be justified in allowing the proposed amendment which might, but not necessarily would, result in throwing The Diamond State Steel Company into bankruptcy. There are several reasons strongly supporting this view. It does not appear from the affidavits and exhibits that at the time of the filing of the pending petitions The Diamond State Steel Company was insolvent within the meaning of § 1a (15) of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419]. From the proofs it cannot be inferred that the aggregate of the company's property, exclusive of any property which it may have conveyed, transferred, concealed or removed, or permitted to be concealed or removed, with intent to defraud, hinder or delay its creditors, was not at a fair valuation, sufficient in amount to pay its debts. On the contrary the evidence is strong that the company was not insolvent as defined in the act. While by legal possibility insolvency on the part of the company might be shown on a trial in bankruptcy, the present showing is entitled to much weight in considering what the exercise of a sound discretion requires with respect to the allowance of the proposed amendments. Again, the petitioning creditors on a trial in bankruptcy would be met with the fact, which might or might not prove fatal, that all of them either procured or consented to the appointment of receivers who for four months carried on the business, involving large expenditures as well as receipts. Should the petitioning creditors fail to have the company adjudged bankrupt, certainly no good would result from the

granting of leave to amend. On the other hand, should an adjudication of bankruptcy be secured, it would, in my opinion, necessarily prove harmful, if not disastrous, to the creditors of the company. An adjudication in bankruptcy certainly would not facilitate an early termination of the litigation with the Philadelphia Warehouse Company, or promote the most advantageous sale of the property covered by the alleged lien of that company; but, on the contrary, would be calculated to cause delay in the accomplishment of these desirable ends. It would interrupt and introduce much confusion and embarrassment in the administration of the estate of The Diamond State Steel Company. If no temporary receivers were appointed in the bankruptcy proceedings the present receivers would be left in charge of the affairs, property and business of the company for an indefinite period measured, perchance, by the time taken by an appellate tribunal in hearing and deciding the case on appeal or petition of review taken or filed before the appointment and qualification of a trustee; and during all that time the receivers would be embarrassed or hampered by the provisions of the bankruptcy act. If, on the other hand, temporary receivers were appointed, they might or might not be the existing receivers. If they were not, much expense would be involved in their compensation and the fees of their counsel on account of acquiring the knowledge of and experience in the management of the affairs of the company now possessed by the existing receivers, and much time be consumed to attain that end. If the temporary receivers were the existing receivers their plans for the reorganization of the company and the payment of its debts would doubtless seriously be interfered with and possibly or probably defeated. In any event troublesome questions would arise which would not be presented under the existing receivership. I can perceive no possible advantage to the creditors of the company to be derived from the prosecution of the bankruptcy proceedings and am convinced that such proceedings could enure only to their detriment. An administration of the property of the company under the present receivership, I have no doubt, will be advantageous to its creditors and possibly to its stockholders.

For the reasons given the granting of leave to amend would not, in my opinion, be a proper exercise of judicial discretion. It follows that such leave must be denied, and consequently, that the motions to dismiss the petitions must be granted.