## In re FARTHING.

(District Court, E. D. North Carolina. January 18, 1913.)

1. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—SUFFICIENCY OF PETITION.

The sufficiency of a petition in involuntary bankruptcy in respect to the description of the claim of a petitioner may fairly be tested by the rules governing a declaration or complaint in an action on such claim, and should distinctly, and not inferentially, allege all facts essential to state a cause of action thereon, and which might be put in issue by the answer in such an action. The existence of claims of sufficient number and amount should also be alleged with such particularity and definiteness as will enable the court to find from the petition the essential jurisdictional facts.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

2. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—SUFFICIENCY OF PETITION.

Such a petition alleging that petitioners own and hold negotiable notes executed by the alleged bankrupt, which are due and owing to them, giving the amount held by each, but without stating the dates of execution or maturity, to whom payable or whether executed by defendant as sole or joint maker, or as principal or surety or indorser, is insufficient as too vague and indefinite.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

3. BANKRUPTCY (§ 81*)—INVOLUNTARY PROCEEDINGS—SUFFICIENCY OF PETITION.

Where the act of bankruptcy alleged in an involuntary petition is the making of a general assignment by the debtor, nearly four months prior

to the filing of the petition, and which appears on its face to have been very fair and reasonable, it is especially requisite that the petition should set out fully and particularly all facts with respect to the claims of petitioners, that it may appear whether they were creditors at the time of the assignment or became such afterwards by purchase from creditors who may have assented to the assignment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 59, 113–118, 125; Dec. Dig. § 81.*]

4. BANKRUPTCY (§ 60*)—"ACT OF BANKRUPTCY"—GENERAL ASSIGNMENT.
The making of a general assignment for the benefit of creditors constitutes an act of bankruptcy under Bankr. Act July 1, 1898, c. 541, § 3a, 30 Stat. 546 (U. S. Comp. St. 1901, p. 3422), as amended by Act Feb. 5, 1903, c. 487, § 2, 32 Stat. 797 (U. S. Comp. St. Supp. 1911, p. 1493), without regard to the solvency or insolvency of the debtor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 80; Dec. Dig. § 60.*

For other definitions, see Words and Phrases, vol. 1, p. 118; vol. 8, p. 7562.]

5. BANKRUPTCY (§ 84*)—INVOLUNTARY PETITION—VERIFICATION—AMENDMENT.
The verification of a petition in involuntary bankruptcy on knowledge, information, and belief is insufficient, but the defect is not jurisdictional, and may be cured by amendment.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 126–129; Dec. Dig. § 84.*]

6. BANKRUPTCY (§ 84*)—INVOLUNTARY PETITION—AMENDMENT—DISCRETION OF COURT.
An alleged bankrupt owned property valued at about $300,000, consisting chiefly of real estate, and was indebted in nearly that amount, largely as surety for others. With the consent and by the advice of a large majority of his creditors who owned 97 per cent. in amount of the claims against him, he executed a deed of assignment conveying all of his property, except his residence, which was conveyed to his wife, to two trustees to be handled and disposed of in their discretion, and the proceeds applied on his debts pro rata. The trustees were competent, and their compensation was fixed by the deed so as to insure an economical administration of the property. The debtor's wife joined in the deed releasing her right of dower. Nearly four months after the deed, petitioners, representing less than 3 per cent. of the indebtedness, filed a petition in involuntary bankruptcy, alleging the making of the deed as the act of bankruptcy. The petition was fatally defective, but might be validated by amendment. It fairly appeared from the evidence submitted that the property, if administered by the trustees under the deed, would pay all indebtedness and probably leave a surplus of several thousand dollars, but that if administered in bankruptcy, subject to the wife's dower rights, it certainly would not pay the indebtedness. *Held,* that to permit an amendment of the petition would not be in furtherance of justice, nor in the interests of creditors, and that, in the exercise of its discretion, the court would refuse leave to amend, and dismiss the petition.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 126–129; Dec. Dig. § 84.*]

In the matter of G. C. Farthing, alleged bankrupt. On demurrer to petition and motion for leave to amend. Demurrer sustained, and petition dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

L. L. Tilley and J. A. Giles, both of Durham, N. C., and Armistead Jones & Son, of Raleigh, N. C., for petitioners.

J. S. Manning and Victor S. Bryant, both of Durham, N. C., for respondent.

Winston & Biggs, of Raleigh, N. C., Percy Reade, Branman & Brawley, Guthrie & Guthrie, and W. L. Foushee, all of Durham, N. C., and B. S. Royster, of Oxford, N. C., for creditors.

CONNOR, District Judge. J. W. Smith and three others filed their petition in this court on December 12, 1912, containing the essential jurisdictional averments in regard to residence, amount of general indebtedness, on the part of the respondent, etc. They further allege that they are creditors of respondent "having provable claims against him which amount, in the aggregate, in excess of the amount of securities held by them, to five hundred ($500) dollars," etc.

They further allege:

"That the nature and amount of your petitioners' claims and the securities held by them, if any, are as follows: Negotiable notes executed by said G. C. Farthing and held and owned by your petitioners, viz., A. N. Blalock, $500; J. A. Walker, $500; J. W. Smith, $4,800; Raschad Tilley, $225—all of which said negotiable notes are now due and owing to your petitioners by the said G. C. Farthing. That within four months next preceding the filing of this petition, viz., on the 23d day of August, 1912; the said G. C. Farthing, while insolvent; committed an act of bankruptcy, in that he did on the 23d day of August, 1912, transfer, assign, and convey all of his property, both real and personal, except certain property theretofore conveyed to his wife, to trustees for the benefit of his creditors, which said deed of transfer, assignment, and conveyance is attached hereto and asked to be taken and considered as a part of this petition."

The petitioners ask that the respondent be adjudged bankrupt, etc.

In the deed of assignment, a copy of which is attached to the petition, it is recited:

"That, whereas the said G. C. Farthing is indebted to various parties and desires to secure the payment of all his indebtedness of every kind by an equitable disposition of his property and effects among his creditors," etc.

The property conveyed is described as:

"All the real estate and interest in real estate owned by G. C. Farthing and situate in the city of Durham, or elsewhere, in Durham county, state of North Carolina (excepting residence lot below referred to) and reference is made as a part of this description, as fully as if incorporated herein, by metes and bounds, to the description found in the following deeds and conveyances to G. C. Farthing, recorded in the office of the Register of Deeds of Durham county in books and pages, as follows, to wit."

Following this language is a list of deeds, etc.

The same description is given of the real estate owned by respondent in the counties of Orange and Wake:

"Also all other real estate and interest in real estate owned by G. C. Farthing wherever located, and whether specifically referred to herein or not," etc.

A number of shares of stock in incorporated companies and banks, choses in action, policies of insurance on the life of James E. Shepherd, "and all other personal property of all kinds, of whatever na-

ture or description, and wherever located," etc., is transferred to the trustees named in the deed of assignment.. The residence of respondent is excepted. The trustees are directed to take immediate possession of the property conveyed and assigned, and to sell the same in the manner, at the time, and upon the terms set forth in the deed, and to apply the proceeds to the payment, without preference, to the creditors of the assignor. His wife joins in the execution of the deed for the purpose of releasing dower and homestead rights. The other provisions in the deed of assignment are not material to the question presented upon the pleadings. The petition is signed by each of the petitioners and verified in the following words:

"The petitioning creditors * * * do hereby severally make solemn oath that the statements of fact contained in the foregoing petition are true, according to the best of their knowledge, information, and belief."

Respondent demurred to the petition, assigning as grounds of demurrer: (1) That the nature and amount of the petitioners' claims do not appear, etc. (2) That the nature and amount of the claims of the petitioners is not alleged with sufficient definiteness and particularity as will enable respondent to answer the same, or to know the nature of the indebtedness, etc. (3) That the petition fails to show the nature, amount, and character of the securities, if any, held by the petitioners, etc. (4) It does not appear from the petition that the said G. C. Farthing has committed any act of bankruptcy within the meaning and purview of the Bankrupt Act of 1898, and the amendments thereto. (5) That said petition is not properly verified within the meaning of the law, etc.

The cause was argued upon the petition and demurrer; no motion for amendment being made before the hearing. The grounds of demurrer will be disposed of in the order in which they are assigned. The two first are directed to the same point and may be discussed together. Nothing is found in the Bankruptcy Act prescribing the form of the petition to be filed by creditors in involuntary bankruptcy, nor the degree of definiteness and particularity with which the alleged debts, or claims of the petitioning creditors shall be set out. Section 30 of the act provides that:

"All necessary rules, forms and orders as to procedure, and for carrying this act into effect shall be prescribed, and may be amended, from time to time, by the Supreme Court of the United States." Collier, Bankruptcy (9th Ed.) 571.

It is uniformly held by the federal courts:

"That the general orders promulgated by the Supreme Court, in accordance with this section, are binding on courts of bankruptcy." Id. 572; In re Scott (D. C.) 99 Fed. 404, 3 Am. Bankr. Rep. 625.

Of course, this is subject to the limitation that the rules and forms prescribed are in harmony with the language of the statute—if the two conflict, the court would be controlled by the statute. Burke v. Guarantee Title & Trust Co., 134 Fed. 562, 67 C. C. A. 486. Referring to the power conferred upon the court by section 30 of the statute, Mr. Justice Peckham, in Orcutt v. Green, 204 U. S. 96, 27 Sup. Ct. 195, 51 L. Ed. 390, says:

"There is nothing in that provision inconsistent with, or opposed to, anything in the bankruptcy law upon the subject, and we must therefore take the statute and the order and read them together, the order being simply somewhat of an amplification of the law with respect to procedure."

At the October term, 1898, the Supreme Court, pursuant to the power conferred by the act, promulgated "General Orders and Forms in Bankruptcy" (172 U. S. 666 [Appendix], 18 Sup. Ct. x), of which order—No. 38—is in the following language:

"The several forms annexed to these general orders shall be observed and used, with such alterations as may be necessary to suit the circumstances of any particular case."

Pursuant to this order, "form No.·3" prescribes the essential averments of a creditor's petition in involuntary proceedings in bankruptcy. 172 U. S. 681, 18 Sup. Ct. xix. That portion of this form material to the question presented upon the petition and demurrer is:

"That the nature and amount of your petitioner's claims are as follows. * * *"

Mr. Loveland says that, to comply with this form—

"the petition must set forth and describe the claim or claims of the petitioning creditor or creditors sufficiently to show that they are provable claims and amount, in the aggregate, to $500 or over. Ordinarily, where the debt is founded upon a written instrument, as a note, bond, contract, etc., the paper is annexed to the petition as an exhibit, and proper reference to it is made in that part of the petition which is designed to describe the debt or claim. Where several claims or debts are stated in the petition, each debt should be set forth in a separate paragraph with sufficient particularity to show that it is a provable claim." Loveland, Bankruptcy (4th Ed.) 414.

[1] The demurrer challenges the allegations of the petition in this respect, for that the "nature" of the petitioners' alleged debts is not set forth with sufficient particularity to enable the respondent to answer the same intelligently. It must be conceded that there is but little authority upon the question raised by the demurrer. The industry of counsel and my own investigation discover but few decided cases in which it is discussed. Resort must, therefore, be had to general principles of pleading and the "reason of the thing." ·In Re White (D. C.) 135 Fed. 199, there was a demurrer to the petition, for that it failed to set out particularly the nature of the debt. Judge Holland said:

"Thus far the petitioners have followed the form prescribed by general order 37 (38) of the Supreme Court prescribing the forms in bankruptcy; but in stating their claims, while the amount is given, the nature of the claim is not set forth, and, in that, it is defective, which, however, can be amended so as to meet the requirements·of the act."

The reporter does not set out the language used in describing the nature of the claims, further than that they were "provable claims." In Re Brett (D. C.) 130 Fed. 981, the allegation is:

"That Whitehead is the owner and holder of a promissory note for $100, dated January 15, 1904, made by the alleged bankrupt and payable in three months after its date to Whitehead's order at the Patterson National Bank."

This was held sufficient. There is a difference between the particularity required in filing proof of a debt for the purpose of sharing

in the distribution of the estate and filing a petition in involuntary bankruptcy. In the former the consideration must be set out. Bankr. Act, § 57b; Collier (9th Ed.) 712. Illustrating the principles by which the courts are controlled in the construction of the order of the Supreme Court in regard to the allegations required in petition of creditors in such cases, Lacombe, Circuit Judge, in Re Rosenblatt, 193 Fed. 638, 113 C. C. A. 506, after setting out the averments charging acts of bankruptcy, says:

"It is well settled that such averments, without any specification sufficient to apprise the alleged bankrupt of the charge against him so as to enable him to answer it, are too vague and general."

In the absence of more direct authority, it may aid us in arriving at a correct conclusion of the question raised by the demurrer to recur to the general rules of pleading. It would seem reasonable and just to apply to the petition in this respect the test by which the sufficiency of a declaration or complaint is measured in an action upon a negotiable instrument. The rule uniformly applied is that material facts should be distinctly, and not inferentially alleged. The court will not supply, by intendment, an averment which the pleader has failed to make. The facts constituting the cause of action should be set forth in the complaint with definiteness and certainty. The plaintiff, in his complaint, should apprise the defendant of the precise grounds upon which he relies. The facts may be alleged either upon plaintiff's own knowledge, or upon information and belief. So, it is said of the essential averments in a bill in equity:

"Facts essential to maintain the suit and obtain relief must be stated in the bill, otherwise the defect will be fatal, for no facts are in issue unless charged in the bill." 1 Streets, Federal Equity Practice, § 176.

"Every bill must contain in itself sufficient matters of fact per se to maintain the case of the plaintiff, so that the same may be put in issue by the answer and the proofs." Id. 177.

There are among others which occur to the mind several reasons in this case why a reasonable degree of particularity in setting forth the nature of the claim should be enforced. While it is true that Bankr. Act, § 19, does not, in express terms, secure to the respondent the right to demand a trial by jury in respect to the alleged indebtedness, it is manifest that the allegation of indebtedness is open to a denial by the alleged bankrupt and he may thereby raise an issue of fact which the judge for his own aid and guidance may submit to a jury. The existence of provable debts against the respondent, due to each of the petitioning creditors, or at least to the number required by the act, is jurisdictional. It follows, therefore, that the existence of such debts or claims and their nature should be alleged with such particularity and definiteness as will enable the court to find from the petition the essential jurisdictional fact. In a creditor's bill, to which a petition in involuntary bankruptcy may be assimilated, the indebtedness by the defendant to the plaintiff should be set forth with that degree of particularity of description which would entitle the plaintiff to judgment upon it in an action at law. Mr. Collier, discussing section 19 of the act, says that, while the statute limits the issues to be submitted:

"It is not thought that this precludes the jury from passing on any other pertinent question as. * * * whether petitioning creditor has a provable debt, * * * provided the judge submits such question to them." Oil Well Supply Co. v. Hall, 128 Fed. 875, 63 C. C. A. 343 (C. C. A. 4th Circuit).

[2] Is it not manifest that the respondent cannot safely and intelligently, under oath, as he must do, join issue with the petitioning creditors upon the vague, indefinite terms in which they set out the nature of their alleged claims against him? An analysis of the allegation discloses that "they hold and own negotiable notes executed by G. C. Farthing" for the amounts named, "now due and owing to petitioners." No dates of the alleged notes are given. It is not stated whether the notes are payable to petitioners, or either of them or whether they hold them, or either of them, by assignment, if so, from whom, no due date is given, it does not appear whether respondent executed the notes as sole or joint maker, or as surety or indorser. They allege that the debts are "provable claims." That, however, is a conclusion of law, rather than an averment of fact, as is the allegation that they are negotiable notes, and this is always bad pleading. The fact that the notes are described as "negotiable" contributes to the uncertainty, indefiniteness, and ambiguity which lurks in the entire allegation. If payable to petitioning creditors, why not say so? If held by assignment, how is the respondent to know or surmise to whom they were payable, date, etc.?—of all of which he is entitled to be apprised and the court to be informed. Would any court, proceeding in accordance with any recognized system of procedural law, entertain an allegation so vague and indefinite as a basis for finding the existence of the essential jurisdictional fact without which it could not proceed to render judgment at law or decree in equity? There is, however, another viewpoint from which the question as to the sufficiency of the allegation should be approached. It is held by the District Court of Florida in Re Callison, 130 Fed. 987, that:

"To entitle a creditor to maintain a petition in involuntary bankruptcy against his debtor, he must have been a creditor at the time the act of bankruptcy alleged was committed."

In the opinion of Judge Locke, it is said:

"A literal application of the language of the act would give to any person having a provable debt the power to put a person into bankruptcy for an offense committed before there were any business relations existing between them, and thereby obtain the power of oppressive action by one party by procuring an indebtedness, when, in reality, he had not, in any way, suffered from the act of the alleged bankrupt. The same form of language in the Bankruptcy Act of England and in the Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517) has been carefully examined and the construction put upon it has limited the rights of creditors to such as held debts at the date of the alleged act of bankruptcy"—citing a number of cases.

The learned judge concludes:

"This appears to be not only the conclusion of the courts upon well-considered cases, but a reasonable construction."

This decision was rendered December 24, 1903. It was affirmed by the Circuit Court of Appeals (5th Circuit, April 8, 1904) in Brake v. Callison, 129 Fed. 201, 63 C. C. A. 359. It is true, as insisted by coun-

sel for petitioners, that it appeared on the face of the petition in the case cited that the claim was based upon a judgment in an action for a tort, rendered subsequent to the alleged act of bankruptcy. It is also true that the authority of the decision is questioned, and a contrary conclusion reached, in Re Hanyan (D. C.) 180 Fed. 498. While not holding that the failure to allege that the petitioners were creditors of respondent at the time of the alleged act of bankruptcy because the question is not very clearly presented, I am impressed with the force of the reasons upon which the court, in Callison's Case, so held. It would be an injustice in many cases, and, upon the disclosures made upon the argument, in this case a gross injustice, to put it in the power of a person to work a great injury, not only to the debtor, but to his other creditors by permitting him to obtain control of a sufficient number of claims, after the execution of the deed of assignment, to give him a status enabling him, in collusion with others, to institute involuntary proceedings in bankruptcy, and thereby invalidate an arrangement to which more than 95 per cent. of the creditors had assented, and in which provision is made for the claims purchased by him. Certainly, it can be no hardship upon such petitioners nor savor of a technical objection to require them to set forth truly and frankly when and by what means they acquired "provable claims."

[3] It is uniformly held that where provision is made by a debtor with the concurrence of his creditors for the payment of his debts, creditors who assented to, or concurred in, such an arrangement will not be permitted to petition their debtor into involuntary bankruptcy, assigning as ground therefor the making such arrangement or provision. Bankruptcy cases, in which the doctrine of estoppel is enforced, are based upon the fact that such a proceeding would work wrong, not only to the debtor, but to his creditors, who, together with petitioners, concurred in making the provisions or arrangement. "When a creditor has voluntarily assented to the administration of the bankrupt's estate by means of an assignment, as by accepting its terms, or otherwise actively co-operating in its execution, he is estopped from thereafter filing an involuntary petition." Collier, Bankruptcy (9th Ed.) 774, citing Durham Paper Co. v. Seaboard Knitting Mills (D. C.) 121 Fed. 179 (E. D. N. C.). This case is decided upon the authority of Simonson v. Sinsheimer, 95 Fed. 948, 37 C. C. A. 337 (C. C. A. 6th Circuit), in which the opinion is written by Judge Taft, concurred in by Judge, now Justice, Lurton. Following a very carefully considered review of the English and American cases, the learned judge says:

"While the doctrine may have rested wholly on estoppel, it would be difficult now to explain thus all the cases of election. We think the only just ground for refusing to allow a man to complain of an act of bankruptcy is that he induced the act, or, after its commission, he so acted with regard to it that he gave others the right to act on the faith of its validity so far as his subsequent conduct would affect it. On the one hand, it would be gross inequity to allow him to subject the debtor to judgment for an act he induced; and, on the other, it would be equally unjust to allow him to repudiate, as invalid, a transaction when, by his conduct, he had induced others to change their position on the faith of its validity."

This is but the enforcement of the rule which requires a man to act in good faith, without which, as said by Pearson, C. J., in Armfield

v. Moore, 44 N. C. 157, it would be impossible to conduct the ordinary business affairs of life. While it is true that petitioners are not called upon to negative in their petition the existence of this defense, yet, if the nature of the claims held and owned by them was set out with reasonable particularity, respondent would be informed whether, if held and owned by assignment, the assignors had, by their concurrence in the execution of the deed of assignment, relied on as the sole act of bankruptcy, been estopped from petitioning him into bankruptcy and thereafter sought, by assigning their claims, to enable petitioning assignees to do so. These and many other reasons occur to the mind why the demand that the petitioners should set out, with reasonable particularity, the nature—that is, dates—to whom payable, whether acquired by assignment, etc., of their claims, is neither technical nor violative of the liberal system of pleading now enforced by courts. While the demurrer must be disposed of by reference only to what appears upon the petition, yet it is suggestive, if not persuasive, that the failure to apprise respondent of the essential facts to which he was entitled upon the face of the petition was not accidental, nor the result of oversight, is found in the facts appearing upon the petition and the deed of assignment attached thereto. The deed was made August 23, 1912, while the petition was not filed until December 12, 1912, eleven days prior to the expiration of the four months within which the law required it to be filed. There was evidently no haste in its preparation. Again, it is evident from an inspection of the deed that property, both real and personal, of large value is conveyed and assigned. The terms of the trust are singularly fair and reasonable, securing an economical administration of the estate and equal distribution, without preference, among the creditors. The dower rights of respondent's wife is released, so that the property may be brought to sale free from incumbrance. It will be noted that there are no suggestions in the petition of any concealment or retention of property nor any wrongful purpose or intent. Certainly, in view of these significant facts, pregnant with suggestions of some other purpose on the part of petitioners than securing an equitable distribution of respondent's estate, they should be required to conform to well-settled principles and rules of pleading. Courts of bankruptcy deal with the substantial rights of parties, upon the maxim of a refined equitable jurisprudence, that "equality is equity," but they, as do all other courts, require a frank, concise, and reasonably definite statement of the facts upon which their jurisdiction is invoked. When it is in the power of a party asking relief to make such statement, the court will not, by strained inferences or intendment, aid an obscure, indefinite pleading. The petitioners could, without the slightest trouble, have either given the requisite information or attached to the petition a copy of the negotiable notes held by them. I am of the opinion that the demurrer, in respect to the first and second causes, should be sustained.

The third ground, that the petition fails to show the nature, amount, and character of the securities, if any, held by the petitioners, is not pressed and is overruled.

[4] The fourth ground of demurrer, that it does not appear from the petition that respondent has committed an act of bankruptcy within the meaning of the act, is overruled. Section 3 (4) of the act declares that, if a person has "made a general assignment for the benefit of his creditors," he thereby commits an act of bankruptcy. A clear distinction is made between acts of bankruptcy defined by subdivisions (2), a preference, and (3), permitting a creditor to secure a preference, and the last clause of (4) applied for a receiver, etc., and subdivision (1), (4) and (5). The acts declared in (2), (3), and the last clause of (4) involve the fact of "being insolvent"; the others do not. In West Co. v. Lea, 174 U. S. 594, 19 Sup. Ct. 836, 43 L. Ed. 1098, it is held that solvency is not a valid defense to a petition in involuntary bankruptcy when the debtor has made a general assignment for the benefit of his creditors. It is clear that the deed of assignment made by respondent is a general assignment within the meaning of the act and of the laws of their state.

[5] The fifth ground attacks the validity of the verification. It is manifest that the verification does not comply with order No. 38, form No. 3. It will be noted that forms Nos. 1 (18 Sup. Ct. xi) and 2 (18 Sup. Ct. xviii) require that the verification be made only "upon information and belief." These are petitions in voluntary bankruptcy, and have attached to them, individually and as partnerships, the schedules. It may be that the court made the distinction because in the former the schedules of necessity contained much matter in regard to which the petitioners could speak only upon information and belief. The forms are found in the official promulgation of the orders. 172 U. S. 667 et seq., 18 Sup. Ct. xi. It is held by the Supreme Court of North Carolina that, where the statute prescribes the form of verification of a pleading, it must be followed and a verification according to affiant's "best knowledge, information, and belief" does not meet the requirement. In Benedict v. Hall, 76 N. C. 113, the court held that, for a failure to comply with the prescribed form, the defendant was entitled to have a warrant of attachment vacated. In Cowles v. Hardin, 79 N. C. 577, judgment was rendered against defendant for want of an answer. The complaint was verified according to plaintiff's "best knowledge, information and belief." Smith, C. J., said:

"The form of the oath is such a departure from that prescribed that it has already been declared insufficient. * * * The court ought not to have proceeded to final judgment until the complaint was sworn to." Cole v. Boyd, 125 N. C. 499, 34 S. E. 557.

It is due counsel for petitioners to say that they were misled, as to the form of the verification, by following the supplementary form No. 118 in Collier on Bankruptcy, which he is careful to say is "in no sense, official." In the volume issued by Mr. Hagan and Mr. Alexander (Mathew Bender & Co. publishers) form No. 5, page 2, the verification is in the language used by petitioners. This form is not "official." While I am of the opinion that the verification does not comply with the official form, it is well settled that the defect is not fatal, the verification is not jurisdictional, and should not, because of infirmity, work a dismissal of the petition. It may be cured. Green River De-

posit Bank v. Craig (D. C.) 110 Fed. 137, and many other cases. 3 Standard Enc. Proc. 973. The petitioners would be permitted to verify the petition in accordance with the prescribed form. I am, however, of the opinion that the failure to comply with the rules of pleading in failing to set out with sufficient particularity the nature of the claims is a fatal defect, and unless amended, works a dismissal of the petition.

[6] Counsel for petitioners, while not conceding the validity of the ground of demurrer, frankly recognized that it presented an arguable question, and asked permission to amend the petition. The court would not hesitate to allow the amendment, unless it was made to appear, beyond controversy, that to do so would not only not be in furtherance of justice, but would work manifest and substantial injustice to the respondent and his other creditors. Upon the argument, to meet this phase of the case, several gentlement of the bar, representing a very large majority of the creditors other than petitioners, appeared in person and also filed from counsel not present urgent requests that permission to amend be denied. Letters from creditors holding claims against respondent aggregating more than $150,000 were filed urging that the deed of assignment be executed. It was conceded, on the argument, that out of an indebtedness of about $293,000 the holders of 97 per cent. and a large majority in number were represented by counsel or by letter and telegram concurring in the request that the petition be dismissed. The petitioning creditors represent $6,500 of respondent's indebtedness. The facts disclosed, upon statements made at the hearing, affidavits filed, etc., none of which were controverted, are as follows: Respondent was the owner of a large quantity of real estate in the city of Durham, N. C., and in Durham and adjoining counties, much of which is very valuable, stocks in banks and industrial companies, and choses in action. His real estate is estimated to be worth about $212,500, personalty about $102,800. He owed as principal debtor some $50,000. In addition thereto, by reason of indorsing notes for others, a large part of which was in aid of the establishment of a school designed for the religious training of the colored people at Durham, and for other friends, he found during the summer of 1912 that his total liabilities, as nearly as he could ascertain, aggregated some $293,150. Finding that some of the persons holding notes upon which he was indorser were threatening, or had brought suit against him, he consulted counsel with a view of making provision for applying his property to the payment of his debts and liabilities. Acting upon their advice, a meeting of his creditors and those holding claims upon which he was liable as indorser, so far as he could then ascertain, was called; notice thereof being given. At this meeting Mr. Farthing stated that, while he thought that, if not sacrificed, his property was of sufficient value to pay his debts and liabilities, he desired to pay all just debts, when ascertained, and would adopt any plan that would make this possible without sacrificing his estate; that he desired to pay the just amount due; that he had learned that some of the notes indorsed by him for James E. Shepherd had been discounted at large and usurious rates; that he was willing to convey all of his property, including exemptions allowed by law, to trustees for the benefit of his creditors,

if they should determine that was the best thing to do, but that his wife would not join in such conveyance, unless the residence and household and kitchen furniture was conveyed to her in consideration of the surrender of her inchoate right of dower. The home was estimated to be worth $12,000, and the personal property not exceeding $1,500. She had but little other estate. After discussing the situation, the creditors appointed a committee consisting of business men who were of his creditors, and attorneys representing creditors, to consider the situation, etc. The committee, in view of the conditions existing, including the fact that some creditors had brought suit and would recover judgments at the approaching term of the court, decided that it was best that he should convey the residence and furniture to his wife, and, together with his wife, execute a deed for his other property to trustees. A majority in number and amount having concurred in this suggestion, the deed of August 23, 1912, was executed. An examination of this deed discovers an absolute surrender by Mr. Farthing and his wife of their entire property, except the residence and furniture, real and personal, to trustees for the payment of his just debts and liabilities. The trustee, Mr. Clements, is an experienced real estate dealer in the city of Durham, of admittedly high character for integrity, capacity, and acquaintance with the property assigned. Mr. Sykes is a lawyer of conceded ability and integrity, being, at the time, judge of the city criminal court of Durham. The trustees are directed to take immediate possession of all of the property assigned, and "as speedily as possible, without detriment to the interest of the parties concerned, collect all choses in action, accounts, etc., collect the rents, dividends, interest, or other income arising therefrom. and sell the property of all kinds herein conveyed, at either public or private sale at such times, upon such terms, and in such parcels as may to them seem best for the interest of the creditors." The trustees are directed to rent the real estate until sold. They are required to file bonds, etc., to be approved by the clerk of the superior court of Durham county. For their services in executing the trusts they are each to be paid $75 per month, and are empowered to employ Mr. Farthing at the price of $100 per month to collect the rents and aid in caring for and making sale of the property, etc. The real estate in Durham consists of several stores and a large number of small tenant houses; the rents therefrom being about $1,000 a month. The trustees are directed to sell, at the end of 12 months, the real estate not theretofore disposed of. Careful provision is made for advertising the sale of the property. The trustees are directed to apply the proceeds of the collection of debts, rents, dividends, and proceeds of sale of real and personal estate to the payment of "all just indebtedness of G. C. Farthing, distributing the funds pro rata among each and every one of his creditors according to the respective amounts lawfully due, those who hold security or collateral shall prove against and share in the general fund only on the basis of the balance due after applying the proceeds of such security or collateral to their indebtedness." A resulting trust, after the full discharge of the debts, is declared in favor of G. C. Farthing. Provision is made for the selection of a successor to either

of the trustees in the event of death, or failure to act, as to Sykes by the creditors and Clements by Farthing. The trustees are directed to make "distribution and dividends among the creditors herein provided for of funds collected as promptly and at such intervals as the nature of their trust will permit; it being the purpose of this instrument to reduce the indebtedness of creditors as promptly as possible and to reduce interest items to a minimum." The trustees immediately, after giving the bonds, entered upon the execution of their trust. A report, under oath, filed herein shows a careful estimate of the value of the property and the amount of the indebtedness, leaving a margin of $21,285 after paying all debts in full. Judge Sykes states that since making the estimate they have received an offer for two of the stores at a price $10,000 in excess of their estimate. They state that they were prevented from consummating sales of the real property by the continued threats of petitioner J. W. Smith to have Mr. Farthing adjudged bankrupt, thereby invalidating the title of the trustees and their vendees; that the income from the property will cover the cost of expenses and interest on the debts. They report that:

"It is the belief of the undersigned trustees that the estate is solvent, and, if handled judiciously, will pay the creditors all of the indebtedness which has thus far come to the attention of the trustees."

The transaction thus brought under investigation bears manifest and indisputable evidence of absolute good faith and honest purpose on the part of the unfortunate debtor to dedicate his entire estate, the result of 42 years' hard work and economy, to the payment of his debts. It is further manifest that the plan adopted by the creditors and carried out by him is the best possible way to promote the end in view—the payment of the debts. That the deed executed in pursuance of the plan and manner in which its provisions are being executed will result in the payment of the debts and probably saving a remnant for the debtor and his wife in their old age. He is about 64 and his wife 57 years of age. It is manifest that if he is adjudged a bankrupt and the deed of assignment invalidated, thereby bringing his valuable real estate to sale incumbered with his wife's inchoate right of dower, the creditors will lose very heavily with no resultant benefit to him. A sale of the property so incumbered will inure only to the benefit of purchasers who are willing to speculate with death. If called upon to decide whether, if the property is managed and brought to sale by the trustees, in accordance with the terms of the deed, the debts will be paid in full, I should, upon the evidence before me, find the affirmative. If, on the other hand, the deed is set aside and the property brought to sale incumbered with the dower right of his wife, I would not hesitate to find the negative. A decree, therefore, adjudging respondent a bankrupt with the legal results incident thereto, would be not to declare an existing condition but to create such a condition by the declaration. The moment he is adjudged bankrupt in law, he thereby becomes bankrupt in fact. The deed provides for a very economical, inexpensive method of executing the trust. An administration of the estate in and through the bankrupt court, under most favorable conditions, would entail statutory fees, commissions, and

cost very greatly in excess of the amount authorized to be expended by the deed. This expense would be largely, how much it is impossible to suggest, increased by reasonable allowances to attorneys. That an adjudication of bankruptcy would result in immense litigation at immense cost cannot be doubted. Experience teaches that under the most careful control the expenses incident to a proceeding in bankruptcy are very large. If the power to permit an amendment to the petition is to be exercised in "furtherance of justice" to the debtor and his other creditors, the question as to the manner of its exercise is not debatable. What lawful benefit can accrue to the petitioners by bringing the administration of the estate into the bankrupt court? If, as seems quite certain, their debts will be paid in full by the administration of the estate under assignment, and if, as is absolutely certain, they will not be paid by its administration by the bankrupt court, cui bono grant the motion to amend? It is difficult to fathom the purpose of the petitioners in seeking to put respondent into bankruptcy. A reason is suggested in the affidavit made by respondent, and not denied, that one of the petitioners of large means has in response to the request that he should not have the estate thrown into bankruptcy, and the deed conveying the wife's inchoate right of dower set aside, lest great injury be done to the creditors and lest the real estate of the respondent be forced upon the market in such form that its true value will not be realized, replied that he would be willing to buy the property at the sale, and, although he might realize less upon his claim, he would more than recoup his losses at the sale of the property, if made in this way. Whether or not the petitioning creditor made this statement, it requires no very great mental acumen to find that such a purpose might lurk in the mind of a person whose conduct is so inconsistent with that which the conceded conditions would suggest as wise and fair to himself and others similarly situated. It is difficult, if not impossible, to conceive how, unless in the way suggested, or by obtaining some other unfair advantage, the interest of petitioners can be different from that of all the other creditors. It is suggested that one or more of the other petitioners holding the smaller claims were either present or were represented at the meeting held by the creditors when the execution of the assignment was agreed upon, and acquiesced therein, and have since given their assent thereto. It is not necessary to pursue this suggestion. The power to allow amendments to pleading is, and should always be, exercised liberally, limited only by the inquiry whether to do so is "in furtherance of justice." It is, however, a power not to be exercised arbitrarily, but with a careful, wise, judicial discretion, in the light of all the facts and conditions, and the rights of all persons concerned. I have investigated, with more than usual care, and set forth, at more than usual length, the facts developed upon the motion to amend because usually the motion is granted as a matter of course, and because the interests, both personal and financial, involved are large. Nothing short of a strong conviction that to grant the motion in this case would work great injustice to an honest, unfortunate debtor overtaken, at an age when he may not recover his estate, by debts largely incurred for the benefit of others, who, complying with the wishes of the large majority

of his creditors in the manner suggested by them, has applied his entire estate to the payment of his debts and that the interest of 97 per cent. of the creditors, who, wisely and in good faith, made the arrangement and now insist that it be executed, would suffer. To deny the motion deprives the petitioners of no lawful or just right to which in a court of equity they are entitled. To grant the motion would result in throwing upon the market a large quantity of real estate in many parcels, incumbered with a burden of uncertain extent, impossible of ascertainment. It is of common knowledge that at sales made under such conditions speculators have an advantage over men who wish to buy fair titles at fair prices. While the exercise of the power to allow amendments is of necessity dependent very largely upon the facts of each case, it is enlightening to have the opinion of other courts dealing with similar conditions. I find a strikingly analogous case in Woolford v. Diamond State Steel Co., 138 Fed. 582, in which Judge Bradford (District Court Delaware), deals with a motion to amend a petition in involuntary bankruptcy. His opinion is so well considered, and his views so clearly and forcibly expressed, that I venture to appropriate them, so far as relevant to the instant case. There, the property of the corporation had at the suit of a large number of its creditors been placed in the hands of a receiver appointed by the state court in a creditor's bill. While being administered for the benefit of all of the creditors, a small number of them filed two petitions against the corporation for the purpose of having it adjudged bankrupt. The court, upon a motion to dismiss, found the petition defective. Upon a motion to amend the learned judge reviewed, and discussed, at length, the evidence offered upon that question. He said:

"The granting of leave to amend the petition, which might result in throwing the Diamond State Steel Company into bankruptcy, is a subject which has received careful consideration. In a suit between two individuals, when one of them has made a slip in his pleadings, fatal unless corrected, the court usually will allow an amendment on, or without, terms if not calculated to subject the other party to undue hardship or prejudice. Under such circumstances, to refuse an amendment may, and probably would, not be an exercise of sound discretion. But there are cases in which leave to amend should be denied in the exercise of such discretion, owing to the character and relationship of the persons and interests to be affected. In one of the pending cases, three of the unsecured creditors, and in the other, four, seek to have a large estate, real and personal, in which hundreds of creditors are interested, now in custodia legis, and in course of administration by the Circuit Court, pursuant to the desire of an overwhelming majority of creditors holding an overwhelming proportion of the amount of the unsecured claims, turned over to this court for administration in bankruptcy. * * *

But, the petitions being fatally defective, leave to amend should not be granted and the administration drawn from the Circuit Court, unless for cogent reasons. It should at least appear that a clear preponderance of the interest of the unsecured creditors, to say nothing of the holders of mortgage bonds, would better be conserved or promoted by proceedings in bankruptcy than by the administration of receivers acting by authority of the Circuit Court."

Referring to the suggestion that some of the petitioning creditors acquiesced in the proceeding in which the receivers were appointed, Judge Bradford said:

"It is true that such an objection, although presented in the argument, was not included among the grounds assigned upon the motion to dismiss.

Should, however, the proposed amendments be allowed, the objection undoubtedly would be raised by answer. This circumstance may be entitled to some weight in the determination of the motion to amend."

He concludes, after a very full discussion of the merits of the motion:

"I can perceive no possible advantage to the creditors of the company to be derived from the prosecution of the bankruptcy proceedings and am convinced that such proceedings could inure to their detriment. An administration of the property of the company under the present receivership, I have no doubt, will be advantageous to its creditors and possibly to its stockholders."

Reaching the same conclusion in this case for the reasons set forth and others not referred to, the motion to amend must be denied. The petition will be dismissed at the cost of petitioners. Let an order be drawn accordingly.