## In re REFUND CASH GROCERY.

District Court, D. Idaho, E. D.   November 5, 1928.

No. 3861.

B. A. McDevitt, of Pocatello, Idaho, for petitioning creditors.

Peterson, Baum & Clark, of Pocatello, Idaho, for Idaho Wholesale Grocery Co. and Meyer, receiver.

CAVANAH, District Judge. ■ The Nuckolls Packing Company, the Sugar City Milling & Elevator Company, and the Shelley Hardware Company, being three of the creditors of the Refund Cash Grocery, holding claims in the aggregate amount of $1,705.22, filed their petition in this court on September 17, 1928, and alleged that the Refund Cash Grocery committed an act of bankruptcy on May 31, 1928, by allowing a receiver to be appointed under an order of the state district court, which receiver is now in charge of its property. The Idaho Wholesale Grocery Company, one of the creditors of the Refund Cash Grocery, who holds 96 per cent. of the indebtedness against the Refund Cash Grocery in the total amount of $103,280.74, moved to dismiss the involuntary petition so filed, and attacked the validity of the verification thereto upon the ground that to permit an amendment of the petition would not be in furtherance of justice nor in the interests of creditors. It is manifest that the verification to the petition does not comply with the law, and that is conceded to be the case upon the argument. If the verification to the petition is insufficient, and unless the amendment is allowed, the petition should be dismissed. While it is within the discretion of the court to allow a verification to an involuntary petition in bankruptcy to be amended, yet it is uniformly held that such an amendment will not be allowed unless it clearly appears that the ends of justice would be promoted thereby, and in the interests of creditors. Wilder v. Watts (D. C.) 138 F. 426; In re Farthing (D. C.) 202 F. 557. Or it should be denied if the application is made after unreasonable delay.

■ Affidavits on behalf of the petitioners and the objecting creditor, Idaho Wholesale Grocery Company, have been filed, and while there is some difference between them concerning certain facts presented for consideration, I am forced to conclude therefrom that the Refund Cash Grocery has for the past three years operated a chain of eight grocery stores in this state, doing an annual gross business of $250,000. Upon petition, the state district court, on May 31, 1928, appointed a receiver of the company, who took over its assets with authority to operate and manage the stores. At the time of the appointment of a receiver, the company was indebted in the sum of $107,000, and its stock of merchandise was considerably depleted, and it became necessary, in order to preserve the good will of and carry on the business, to add merchandise to its stores. The state court entered its order, directing the receiver to purchase enough merchandise to replace the stock of the company in such way as to be conducive to the most efficient operation. Credit was extended by the Idaho Wholesale Grocery Company to the receiver in the sum of $14,085.63, which has not been paid. Prospective purchasers are in view, who are willing and able to purchase the property of the company as soon as these proceedings are terminated. A great part of the value of the stores consists in their value as a going concern and chain organization, and which ex-

ceeds the value of the company's merchandise. It is further set forth that the three creditors who filed the involuntary petition have known of and acquiesced in the receivership and in the receiver operating the stores; that they have waited over three months after the receiver was appointed before they filed their petition, and have filed their claims with the receiver; that if the estate of the company is administered in and through the bankruptcy court, it would entail additional statutory fees, commissions, and costs, greatly in excess of the amount expended in the receivership proceedings.

While there is some conflict in the affidavits as to whether it would be to the best interests of the creditors to continue the administration of the estate by the receiver, yet we must assume that the state court will, according to law and to the interests of the creditors concerned, properly dispose of all of the assets of the company. The inquiry then is: What lawful benefit can accrue to these three petitioners by bringing the administration of the estate into the bankruptcy court? It is difficult to fathom the purpose of the petition, after the expense has already been incurred, in seeking to put the company into bankruptcy. The reason given in the affidavit of the objecting creditor is in dispute. However that may be, all of the creditors of the company are now being represented by the receiver under the orders of the state court, and we must further assume that all of the estate of the company will be applied in the payment of claims against it. To deny the motion of the three creditors holding the small claims to amend their petition does not deprive them of any just or lawful right which a court of equity can grant, because the state court has acquired first jurisdiction of the estate, and all the rights of the petitioners can be protected in the same manner as the other creditors.

A strikingly analogous case is Woolford v. Diamond State Steel Co. (D. C.) 138 F. 582, in which the court deals with a motion to amend a petition in involuntary bankruptcy, and there the court said: "The granting of leave to amend the petitions, which might result in throwing the Diamond State Steel Company into bankruptcy, is a subject which has received careful consideration. In a suit between two individuals where one of them has made a slip in his pleadings, fatal unless corrected, the court usually will allow an amendment on or without terms, if not calculated to subject the other party to undue hardship or prejudice. Under such circumstances to refuse an amendment may and probably would not be an exercise of sound discretion. But there are cases in which leave to amend should be denied in the exercise of such discretion, owing to the character and relationship of the persons and interests to be affected. In one of the pending bankruptcy cases three alleged unsecured creditors, and, in the other, four, seek to have a large estate, real and personal, in which hundreds of creditors are interested, now in custodia legis and in course of administration by the circuit court, pursuant to the desire of an overwhelming majority of creditors holding an overwhelming proportion of the amount of unsecured claims, turned over to this court for administration in bankruptcy. If the petitions were not defective, the petitioners would have a right under the bankruptcy act to proceed to support them by evidence, and, if successful, to have the Diamond State Steel Company adjudged bankrupt, regardless of any delay, confusion or expense attending such a course. But the petitions being fatally defective, leave to amend should not be granted and the administration drawn from the circuit court unless for cogent reasons. It should at least appear that a clear preponderance of the interests of the unsecured creditors, to say nothing of the holders of mortgage bonds, would better be conserved or promoted by proceedings in bankruptcy than by the administration of receivers acting by authority of the circuit court."

After considering the affidavits, I am convinced that there can be no possible advantage to the creditors of the company derived from the pendency of the bankruptcy proceedings, and that the administration of its property under the receivership will not be detrimental to the interests of the creditors.

For the reasons stated, the motion to amend must be denied, and an order be entered accordingly.