**In re BAY CITIES GUARANTY BUILD-ING–LOAN ASS'N.**

No. 16175.

District Court, S. D. California, Central Division.

April 9, 1931.

Gold, Quittner & Kearsley, of Los Angeles, Cal., for petitioning creditors.

David H. Cannon, of Los Angeles, Cal., for alleged bankrupt.

JAMES, District Judge.

The questions heretofore submitted for decision, after hearing had, relate to the suf-ficiency of the alleged answer to the involuntary petition, as filed in the name of the alleged bankrupt. The petitioning creditors have moved to strike from the files the alleged answer on the ground that it was not authorized to be made on the part of the alleged bankrupt. Counsel for the answering party has countered with the objection that the bankruptcy court has no jurisdiction of building and loan associations as organized under the California law, and with a showing that the board of directors, after the alleged answer was filed, regularly ratified the filing of the same. The questions briefly are:

(1) Is a building and loan association a banking corporation, and hence exempt from the jurisdiction of the bankruptcy court?

(2) Did the action of the board of directors of the alleged bankrupt, taken subsequent to the filing of the alleged answer ratifying the filing of the same, give validity to the pleading?

(3) If the answer is held to be unauthorized should the court in the circumstances of the case allow an amendment to be made?

As to the matter of jurisdiction, the Federal Bankruptcy Law as now in force (section 4, subd. (b), 11 USCA § 22 (b), provides that involuntary bankrupts may be:

"Any natural person, except a wage earner or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any moneyed, business, or commerical corporation, except a municipal, railroad, insurance, or banking corporation. * * * "

The Bankruptcy Act was amended in 1910, and was extended to cover moneyed, business, or commercial corporations. The provisions of the Bankruptcy Act creating exempt classes are strictly construed, and corporations claiming such exempt status must clearly come within the descriptions used. See Collier on Bankruptcy, vol. 1, p. 212.

A determining characteristic of a banking institution is that it shall receive money or deposits, which it may use in the course of its banking business, but which it is bound to repay to the depositors. Building and loan associations are organized for the purpose of investing or loaning the money of its certificate or shareholders. The California Civil Code, § 633, provides in part:

"That no such association shall, at any time, have or carry upon its books, for any member or investor, any demand, commercial or checking account or any credit to be withdrawn upon the presentation of any negotiable check or draft."

The same section of that law provides that every building and loan corporation in setting forth the purposes for which it is organized in its articles shall state that it is formed "to encourage industry, frugality, home building, and savings among its shareholders and members; the accumulation of savings; the loaning to its shareholders and members of the moneys and funds so accumulated, with the profits and earnings thereon, and the repayment to each of his savings and profits, whenever they have accumulated to the full par value of the shares, or at any time when he shall desire the same or when the corporation shall desire to repay the same, as it may be provided in the by-laws;"

Building and loan associations under the laws of California are not under the supervision of the banking department of the state, and are excluded from regulations under the State Banking Act; they are not inspected by the superintendent of banks; there is a separate supervising official who examines into their business affairs and who checks improper or unsafe transactions and who may cause them to be liquidated. The Circuit Court of Appeals for the Eighth Cir-

cuit, in the case of Gamble v. Daniel, 39 F.(2d) 447, 450, had under consideration the question as to whether, under the law of Nebraska, a corporation, there described as the Peters Trust Company, was a banking corporation. What was said of the law there is applicable here; quoting from the opinion:

"When Congress spoke of 'banking corporations' it spoke as of 1910. It used the words in no technical nor special sense, but as they were then ordinarily understood. At that time, the ordinary conception of a bank was of a business which was based primarily upon the receipt of deposits (general or special), which deposits were used by the bank for loans, discounts, buying and selling commercial paper, and other business purposes. * * * Other businesses might and did, and still do, deal in commercial paper, make loans or borrow money without any one thinking of them as banks. When a business takes deposits and then does the above or related things, every one knows it is a banking business. [Citing cases.] * * * In short, while there may be other attributes which a bank may possess, yet a necessary one is the receipt of deposits which it may use in its business."

There are distinct differences between the character of the business done by banking institutions properly so called and investment organizations, of which building and loan associations are a marked example. Remembering that business organizations, within the class excepted from the operation of the Bankruptcy Act, must answer strictly to their descriptive character, the conclusion is readily reached that the alleged bankrupt in this case does come within the Federal Bankruptcy Act and that it may be adjudicated a bankrupt. While the point as to jurisdiction appears not to have been made, federal courts in California have assumed jurisdiction in bankruptcy heretofore of building and loan associations. See Circuit Court of Appeals decisions, Ninth Circuit, in Wilson et al. v. Continental Building & Loan Association, 232 F. 824, and Merchants' National Bank v. The Same, 232 F. 828.

The answer herein consisted of a bare denial that an act of bankruptcy had been committed and a denial of insolvency. It was purported to be verified by a director of defendant. The showing was made on the part of the petitioning creditors, and not denied by counsel for the alleged bankrupt, that the filing of the answer was not authorized at any regular meeting of the board of directors, but that, at a date subsequent to the filing thereof, a meeting had been held, at which the resolution was passed assenting to and ratifying the action of the single director who made the verification. Passing the question which counsel for the petitioning creditors also makes that a director, as distinguished from the president and secretary of a corporate organization, may not make such a verification, it seems quite clear that, where an unauthorized answer was filed, which lacked the official direction of the corporate organization made through its regularly constituted officers, such a paper could not be given validity by a subsequent ratification attempted to be made by a board of directors. Being unauthorized when filed, it could not be given a better standing by approval made at a later directors' meeting. It follows that the objection of the petitioning creditors to the answer is well taken, and that the answer should be stricken from the files.

Touching the question as to whether leave should be given to the alleged bankrupt to file an amended answer at this time, the rule relating to the amendments of pleadings may be adverted to. The same rule as relates to amendments to petitions instituting bankruptcy proceedings may be applied to the filing of answers and amendments thereto. The rule is that such amendments will not be allowed unless it clearly appears that the ends of justice will be promoted thereby. See Collier on Bankruptcy, vol. 1, p. 661; Wilder v. Watts (D. C.) 138 F. 426; In re Farthing (D. C.) 202 F. 557. Where amendment to verification was refused, In re Refund Cash Grocery (D. C.) 30 F.(2d) 158. In considering the discretion to be used in allowing amendments, the courts have given great consideration to the interests of creditors. There are many facts before the court which were referred to at the argument which convince me that it would not be to the interest of the great number of creditors and shareholders of the alleged bankrupt to further delay the making of an order of adjudication herein. Prior to the commencement of the bankruptcy proceedings, officers of this building and loan association appeared before the court and urged that, on the petition of a creditor in an equity suit, a receiver should be appointed. At that time, the building and loan commissioner of the state of California, under authority given him by the state law, had decided that, after an examination of the books of the alleged bankrupt, it was his duty to take over the business and cause its liquidation. Because of the pros-

626

pective action intended to be taken by the commissioner, a receiver was not appointed in the equity suit, and immediately thereafter the involuntary petition in bankruptcy was filed. Since the filing of that petition, a great number of creditors have intervened in support of the petition. A receiver in bankruptcy was appointed by this court, and he has been acting for a number of weeks. An intervention by a few creditors was made for the announced purpose of opposing the petition in bankruptcy, but this intervention was finally withdrawn. It appears that, with the co-operation of the receiver, a creditors' committee has been organized, and it may be fairly inferred that a majority of the shareholders and creditors favor an immediate adjudication. The organization is in a sense co-operative. The pretended answer of the board of directors was filed at a date when the adjudication was almost due to be made. Considering the history of the case, the principal occurrences of which have just been referred to, it seems that the interest of all of the persons principally concerned in obtaining satisfaction, or so much thereof as may result, of their claims for money invested, will be best served by bringing the matter to a close and allowing adjudication to be made. It is possible that there may be liability claims against the directors, as to which no definite opinion is intended to be expressed, and which would afford reason why those officers should, as against the interest of the general creditors, want to delay liquidation through the bankruptcy court.

The answer to the involuntary petition is ordered to be stricken from the files. The clerk is directed to enter forthwith an order adjudicating the association a bankrupt, with the usual reference to a referee.